IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| LUKE MCKINNON,<br><br>    Plaintiff,<br><br>v.<br><br><br>MDC PARTNERS INC., MARK J. PENN, CHARLENE BARSHEFSKY, WADE OOSTERMAN, ASHA DANIERE, DESIRÉE ROGERS, BRADLEY J. GROSS, and IRWIN D. SIMON,<br><br>    Defendants. | Civil Action No.<br><br>**COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Luke McKinnon ("Plaintiff") by and through his undersigned attorneys, brings this action on behalf of himself, and alleges the following based upon personal knowledge as to those allegations concerning Plaintiff and, as to all other matters, upon the investigation of counsel, which includes, without limitation: (a) review and analysis of public filings made by MDC Partners Inc. ("MDC" or the "Company") and other related parties and non-parties with the United States Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and other publications disseminated by certain of the Defendants (defined below) and other related non-parties; (c) review of news articles, shareholder communications, and postings on the Company's website concerning the Company's public statements; and (d) review of other publicly available information concerning MDC and the Defendants.

## SUMMARY OF THE ACTION

1. This is an action brought by Plaintiff against MDC and the Company's Board of Directors (the "Board" or the "Individual Defendants") for their violations of Section 14(a) and 20(a) of the Securities Exchange Act of 1934, 15.U.S.C. §§ 78n(a), 78t(a), and SEC Rule 14a-9, 17 C.F.R. 240.14a-9, in connection with the proposed sale of the Company to Stagwell Media LP ("Stagwell") (the "Proposed Transaction"). Stagwell currently owns approximately 19.4% of the Company's outstanding shares.

2. On December 21, 2020, the Company announced that it had entered into an Agreement and Plan of Merger (the "Merger Agreement") with Stagwell. Pursuant to the terms of the Merger Agreement, the Proposed Transaction will be effected using an "Up-C" partnership structure, to permit additional basis step-up and depreciation for the combined company. MDC will be converted into a limited liability company that holds both Stagwell's subsidiaries and MDC's operating assets and Stagwell will contribute its operating businesses to MDC as so converted. The limited liability company will be owned in part by a newly-formed NASDAQ-listed company incorporated in Delaware ("New MDC"), and in part by Stagwell. On a pro forma basis, without giving effect to any conversion of outstanding preference shares of MDC, the pre-transaction holders of MDC Shares would own 26% of the common equity of New MDC and Stagwell shareholders would be issued shares of a new Class C series equivalent to 74% of the common equity of New MDC and exchangeable into shares of New MDC Class A Shares on a one-for-one basis at Stagwell's election.

3. On February 8, 2021, in order to convince the Company's shareholders to vote in favor of the Proposed Transaction, the Board authorized the filing of a materially incomplete and

misleading registration statement with the SEC on Form S-4 (the "Registration Statement"), in violation of Sections 14(a) and 20(a) of the Exchange Act.

4. For these reasons, and as set forth in detail herein, Plaintiff asserts claims against MDC and the Board for violations of Sections 14(a) and 20(a) of the Exchange Act and Rule 14a-9. Plaintiff seeks to enjoin Defendants from taking any steps to consummate the Proposed Transaction unless and until the material information discussed below is disclosed to MDC shareholders before the vote on the Proposed Transaction or, in the event the Proposed Transaction is consummated, recover damages resulting from the Defendants' violations of the Exchange Act.

## JURISDICTION AND VENUE

5. This Court has subject matter jurisdiction over all claims asserted herein pursuant to Section 27 of the Exchange Act, 15 U.S.C § 78aa, and 28 U.S.C. § 1331, as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.

6. This Court has personal jurisdiction over all of the Defendants because each is either a corporation that conducts business in, solicits shareholders in, and/or maintains operations within, this District, or is an individual who is either present in this District for jurisdictional purposes or has sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7. Venue is proper under 28 U.S.C. § 1391 because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## THE PARTIES

8. Plaintiff is, and has been at all times relevant hereto, the owner of MDC shares.

9. Defendant MDC is incorporated under the laws of Canada and has its principal executive offices located at 330 Hudson Street, 10th Floor, New York, New York 10013. The Company's common stock trades on the NASDAQ Global Select Market under the symbol "MDCA."

10. Defendant Mark J. Penn ("Penn") is and has been the Chief Executive Officer and a director of MDC at all times during the relevant time period.

11. Defendant Charlene Barshefsky ("Barshefsky") is and has been a director of MDC at all times during the relevant time period.

12. Defendant Wade Oosterman ("Oosterman") is and has been a director of MDC at all times during the relevant time period.

13. Defendant Asha Daniere ("Daniere") is and has been a director of MDC at all times during the relevant time period.

14. Defendant Desiree Rogers ("Rogers") is and has been a director of MDC at all times during the relevant time period.

15. Defendant Bradley J. Gross ("Gross") is and has been a director of MDC at all times during the relevant time period.

16. Defendant Irwin D. Simon ("Simon") is and has been a director of MDC at all times during the relevant time period.

17. Defendants Penn, Barshefsky, Oosterman, Daniere, Rogers, Gross, and Simon are collectively referred to herein as the "Individual Defendants."

18. The Individual Defendants, along with Defendant MDC, are collectively referred to herein as "Defendants."

## SUBSTANTIVE ALLEGATIONS

### Background of the Company

19.   MDC is a leading global marketing and communications network, providing marketing and business solutions that realize the potential of combining data and creativity. Through its network of agencies, the Company delivers a broad range of client services, including global advertising and marketing, data analytics and insights, mobile and technology experiences, media buying, planning and optimization, direct marketing, database and customer relationship management, business consulting, sales promotion, corporate communications, market research, corporate identity, design and branding services, social media strategy and communications, product and service innovation, and e-commerce management.

### The Company Announces the Proposed Transaction

20.   On December 21, 2020, the Company jointly issued a press release announcing the Proposed Transaction. The press release stated in part:

> NEW YORK, Dec. 21, 2020 /PRNewswire/ -- MDC Partners Inc. ("MDC") (NASDAQ: MDCA) and Stagwell Media LP ("Stagwell") announced today that they have entered into a definitive transaction agreement (the "Transaction Agreement") to combine their respective businesses, uniting the award-winning talent of MDC with the advanced technology platform of Stagwell to create the transformative marketing company today's marketplace demands (the "Transaction"). Together, the companies will significantly expand their range of best-in-class capabilities, depth of expertise, and geographic footprint to deliver expanded value to clients, and meaningfully accelerate the combined company's growth.
>
> "This is a new day for MDC and Stagwell," said Mark Penn, Chairman and CEO of MDC Partners, and Managing Partner of The Stagwell Group. "Together, they unleash precisely the right talent and technology to create a transformative marketing services company offering scaled Creative Performance. MDC is celebrated for bringing award-winning creative firepower to the world's leading and most ambitious companies, and Stagwell has been built with deep and sophisticated technology at its core.

Unencumbered by legacy structures or assets, the combined company will have the integrated, modern offerings marketers deserve, and the resources to invest meaningfully in our global capabilities, our talent, and our clients' future."

The combined company will provide the balance of integrated solutions that modern marketers need to succeed, including second-to-none creativity and communications, scaled media and data capabilities, superior consumer insights, technology development and innovation, and digital transformation. Without giving effect to any conversion of outstanding preference shares, the pre-Transaction holders of MDC Class A and Class B shares ("MDC Shares") would receive 26% of the common equity of the combined company and Stagwell would receive share consideration equal to 74% of the common equity of the combined company (excluding Stagwell's ownership in the combined company derived from its ownership of pre-Transaction MDC Shares), each on a pro forma basis. Stagwell and its affiliates are expected to hold approximately 79% of the common equity of the combined company immediately after closing of the Transaction (assuming no conversion of outstanding preference shares of MDC). Further details on the combination and the business offerings of MDC and Stagwell can be found in our investor presentation at www.mdc-partners.com/investors and accompanying video at www.mdc-partners.com.

With over 8,600 employees across 23 countries, the combined company will be ideally suited to lead marketers into the future, with deepened expertise in digital services, and more than tripling high-growth digital offerings to 32% of the combined business. With a track record of collaboration across disciplines bringing the right technology solutions to its blue-chip clients' business and marketing challenges, the combined company's network also brings experience in building and developing its own proprietary digital products to solve for gaps in the marketing ecosystem, which together could generate $90 - $150 million annual top-line benefit over time.

"Having thoroughly evaluated the Transaction – and having received the recommendation of the Special Committee, which, in close collaboration with its independent legal and financial advisors, met extensively to assess, evaluate and negotiate the Transaction – we are pleased to have reached a definitive agreement that maximizes growth potential for MDC and opportunity for all stakeholders," said Irwin D. Simon, Presiding Director of MDC Partners and Chair of the Special Committee of MDC Partners' Board of Directors. "MDC boasts a rich history and culture of entrepreneurship while innovating to solve for core client and industry needs. Combining these two companies will build on that legacy to create an even stronger industry leader."

\* \* \*

**Governance and Management**

Mark Penn, current CEO and Chairman of MDC and Managing Partner of Stagwell, will continue as CEO and Chairman of the combined company. The management team for the combined company will consist of existing executives from both MDC and Stagwell.

Pursuant to the Transaction Agreement, the board of directors of the combined company will consist of nine members, including Mark Penn and Bradley Gross. Three independent directors on the Board will continue as directors in the combined company and the combined company shall cause such directors to be nominated at the company's next two annual meetings; Stagwell will be entitled to designate the other four directors to serve on the Board.

The combined company will remain headquartered in New York, NY and will maintain a significant presence in Washington D.C.

**Transaction Structure**

Under the terms of the Transaction Agreement, the Transaction will be effected using an "Up-C" partnership structure, to permit additional basis step-up and depreciation for the combined company. Pursuant to the Transaction, MDC will be converted into a limited liability company that holds both Stagwell's subsidiaries and MDC's operating assets and Stagwell will contribute its operating businesses to MDC as so converted. The limited liability company will be owned in part by a newly-formed NASDAQ-listed company incorporated in Delaware ("New MDC"), and in part by Stagwell. On a pro forma basis, without giving effect to any conversion of outstanding preference shares of MDC, the pre-Transaction holders of MDC Shares would own 26% of the common equity of New MDC and Stagwell shareholders would be issued shares of a new Class C series equivalent to 74% of the common equity of New MDC and exchangeable into shares of New MDC Class A Shares on a one-for-one basis at Stagwell's election.

Additionally, MDC and Stagwell will enter into a tax receivable agreement pursuant to which New MDC and Stagwell will share in the economic benefits of tax attributes resulting from Stagwell's exchanges of "Up-C" units.

Concurrently with the execution of the Transaction Agreement, MDC and an affiliate of Goldman Sachs, as sole holder, agreed to renegotiate the terms of MDC's issued and outstanding Series 4 convertible preference

shares (the "Goldman Amendments"). The revised terms reduce the conversion price from $7.42 to $5.00 and extend accretion for two years at a reduced rate of 6%. In connection with the Transaction, an affiliate of Goldman Sachs, as holder, will have the right to redeem up to $30 million of its preference shares in exchange for a $25 million subordinated note or loan with a 3 year maturity (i.e., exchange at an approximately 17% discount to face value). The $25 million note or loan will accrue interest at 8.0% per annum and is pre-payable any time at par without penalty.

Subject to market conditions and other factors, MDC intends to conduct a consent solicitation for certain waivers and amendments to its 6.50% senior notes due 2024 (the "Notes") necessary to close the Transaction. MDC has entered into consent and support agreements with holders of more than 50% of the aggregate principal amount of its Notes to consent to the necessary waivers and amendments in the consent solicitation.

**Path to Completion**

The Transaction is subject to customary approvals, including, but not limited to, approvals from the MDC shareholders at a special meeting called for such purpose (the "Special Meeting"), which will include the approval of (i) 66 2/3% of the votes cast by all holders of various classes of shares of MDC, as applicable, and (ii) pursuant to Multilateral Instrument 61-101 – *Protection of Minority Security Holders in Special Transactions* ("MI 61-101"), a simple majority of the votes cast by the holders of applicable classes of shares of MDC, in each instance voting separately as a class (unless relief or approval is obtained from the applicable securities regulatory authorities to permit voting as a single class), excluding the votes cast by "interested parties" for purposes of MI 61-101 (which will include Stagwell, Mark Penn, Goldman Sachs and their respective affiliates (other than MDC and its subsidiaries) and their joint actors, as applicable) or any votes otherwise excluded for purposes of the "minority approval" determined pursuant to MI 61-101. Additional detail on the process and MI 61-101 can be found below. In consideration for the Goldman Amendments, an affiliate of Goldman Sachs has agreed to consent to the Transaction and waive any conversion ratio adjustments under its MDC Series 4 Preference Shares and has agreed to vote in favor of the Transaction subject to entering into customary definitive documentation to reflect the Goldman Amendments.

Closing of the Transaction is also subject to the satisfaction of a number of other conditions customary for transactions of this nature, including the receipt of certain regulatory and stock exchange approvals. The parties are targeting a closing in the first half of calendar year 2021, subject to receipt of applicable approvals.

Further information regarding the Transaction will be contained in the information circular / proxy statement that MDC will prepare, file and send to each MDC shareholder in connection with the Special Meeting.

Following closing of the Transaction, New MDC will apply to have the Class A shares of New MDC Shares listed on Nasdaq under the same symbol as Class A shares of MDC trade today: "MDCA".

A copy of the Transaction Agreement will be filed on MDC's SEDAR and EDGAR profile and will be available for viewing at www.sedar.com and www.sec.gov.

* * *

**Advisors**

Moelis & Company LLC is serving as financial advisor, and Canaccord Genuity Corp. is serving as independent financial advisor, to the Special Committee of MDC's Board of Directors, with DLA Piper LLP (US) and DLA Piper (Canada) LLP serving as legal advisor to the Special Committee of MDC's Board of Directors. Cleary Gottlieb Steen & Hamilton LLP and Fasken Martineau DuMoulin LLP are serving as legal advisors to MDC. J.P. Morgan Securities LLC is serving as exclusive financial advisor to Stagwell, and Freshfields Bruckhaus Deringer US LLP and McCarthy Tétrault LLP are serving as legal advisors to Stagwell. Kingsdale Advisors is serving as strategic shareholder and communications advisor to MDC Partners. Sloane & Company is serving as communications advisor to MDC.

## FALSE AND MISLEADING STATEMENTS AND/OR MATERIAL OMISSIONS IN THE REGISTRATION STATEMENT

21. On February 8, 2021, the Company authorized the filing of the Registration Statement with the SEC. The Registration Statement recommends that the Company's shareholders vote in favor of the Proposed Transaction.

22. Defendants were obligated to carefully review the Registration Statement prior to its filing with the SEC and dissemination to the Company's shareholders to ensure that it did not contain any material misrepresentations or omissions. However, the Registration Statement misrepresents and/or omits material information that is necessary for the Company's

9

shareholders to make informed decisions regarding whether to vote in favor of the Proposed Transaction, in violation of Sections 14(a) and 20(a) of the Exchange Act.

## Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Company's Financial Projections

23. The Registration Statement contains projections prepared by the Company's management concerning the Proposed Transaction, but fails to provide material information concerning such.

24. The SEC has repeatedly emphasized that disclosure of non-GAAP projections can be inherently misleading, and has therefore heightened its scrutiny of the use of such projections.[1] Indeed, on May 17, 2016, the SEC's Division of Corporation Finance released new and updated Compliance and Disclosure Interpretations ("C&DIs") on the use of non-GAAP financial measures that demonstrate the SEC's tightening policy.[2] One of the new C&DIs regarding forward-looking information, such as financial projections, explicitly requires companies to provide any reconciling metrics that are available without unreasonable efforts.

25. In order to make management's projections included in the Registration Statement materially complete and not misleading, Defendants must provide a reconciliation table of the non-GAAP measures to the most comparable GAAP measures.

---

[1] *See, e.g.*, Nicolas Grabar and Sandra Flow, Non-GAAP Financial Measures: The SEC's Evolving Views, Harvard Law School Forum on Corporate Governance and Financial Regulation (June 24, 2016), *available at* https://corpgov.law.harvard.edu/2016/06/24/non-gaap-financial-measuresthesecs evolving-views/; Gretchen Morgenson, Fantasy Math Is Helping Companies Spin Losses Into Profits, N.Y. Times, Apr. 22, 2016, available at http://www.nytimes.com/2016/04/24/business/fantasy-mathis-helping-companies-spin-ossesinto-profits.html?_r=0.

[2] Non-GAAP Financial Measures, Compliance & Disclosure Interpretations, U.S. SECURITIES AND EXCHANGE COMMISSION (May 17, 2017), *available at* https://www.sec.gov/divisions/corpfin/guidance/nongaapinterp.htm.

26. Specifically, with respect to the projections, the Company must disclose the line item projections for the financial metrics that were used to calculate the non-GAAP measures, including Unlevered Free Cash Flow.

27. Disclosure of the above information is vital to provide investors with the complete mix of information necessary to make an informed decision when voting on the Proposed Transaction. Specifically, the above information would provide shareholders with a better understanding of the analyses performed by the Company's financial advisor in support of its opinion.

### Material False and Misleading Statements or Material Misrepresentations or Omissions Regarding the Financial Opinions

28. The Registration Statement contains the financial analyses and opinions of Moelis & Company LLC ("Moelis") and Canaccord Genuity Corp. ("Cannacord") concerning the Proposed Transaction, but fails to provide material information concerning such.

29. With respect to Moelis' *MDC DCF Analysis*, the Registration Statement fails to disclose: (i) the Company's projected terminal year unlevered free cash flow; (ii) MDC's terminal values; and (iii) the inputs and assumptions underlying Moelis' use of the discount rates ranging from 9.75% to 12.0%.

30. With respect to Moelis' *Stagwell DCF Analysis*, the Registration Statement fails to disclose: (i) the projected terminal year unlevered free cash flow for Stagwell; (ii) Stagwell's terminal values; and (iii) the inputs and assumptions underlying Moelis' use of the discount rates ranging from 7.75% to 9.50%.

31. With respect to Moelis' *Selected Precedent Transactions Analysis*, the Registration Statement fails to disclose the individual multiples and metrics for each of the selected transactions.

32. With respect to Canaccord's *Discounted Cash Flow Analysis of MDC*, the Registration Statement fails to disclose: (i) the levered free cash flows utilized in connection with the tax attributes analysis; (ii) MDC's terminal values; and (iii) the inputs and assumptions underlying Canaccord's use of the discount rates utilized in the analysis.

33. With respect to Canaccord's *Discounted Cash Flow Analysis of Stagwell*, the Registration Statement fails to disclose: (i) the levered free cash flows utilized in connection with the tax attributes analysis; (ii) Stagwell's terminal values; and (iii) the inputs and assumptions underlying Canaccord's use of the discount rates utilized in the analysis.

34. Lastly, the Registration Statement fails to disclose the "fixed fee" that MDC has agreed to pay Moelis in connection with its services.

35. When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed. Moreover, the disclosure of projected financial information is material because it provides shareholders with a basis to project the future financial performance of a company and allows shareholders to better understand the financial analyses performed by the Company's financial advisor in support of its fairness opinion.

36. Without the above described information, the Company's shareholders are unable to cast a fully informed vote on the Proposed Transactions. Accordingly, in order to provide shareholders with a complete mix of information, the omitted information described above should be disclosed.

## COUNT I

### (Against All Defendants for Violations of Section 14(a) of the Exchange Act and Rule 14a-9 Promulgated Thereunder)

37. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

38. Section 14(a)(1) of the Exchange Act makes it "unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78l of this title." 15 U.S.C. § 78n(a)(1).

39. Rule 14a-9, promulgated by the SEC pursuant to Section 14(a) of the Exchange Act, provides that communications with stockholders in a recommendation statement shall not contain "any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading." 17 C.F.R. § 240.14a-9.

40. Defendants have issued the Registration Statement with the intention of soliciting shareholders support for the Proposed Transaction. Each of the Defendants reviewed and authorized the dissemination of the Registration Statement, which fails to provide critical information regarding, among other things, the financial projections for the Company.

41. In so doing, Defendants made untrue statements of fact and/or omitted material facts necessary to make the statements made not misleading. Each of the Defendants, by virtue

13

of their roles as officers and/or directors, were aware of the omitted information but failed to disclose such information, in violation of Section 14(a). The Defendants were therefore negligent, as they had reasonable grounds to believe material facts existed that were misstated or omitted from the Registration Statement, but nonetheless failed to obtain and disclose such information to shareholders although they could have done so without extraordinary effort.

42. The Defendants knew or were negligent in not knowing that the Registration Statement is materially misleading and omits material facts that are necessary to render it not misleading. The Defendants undoubtedly reviewed and relied upon the omitted information identified above in connection with their decision to approve and recommend the Proposed Transaction.

43. The Defendants knew or were negligent in not knowing that the material information identified above has been omitted from the Registration Statement, rendering the sections of the Registration Statement identified above to be materially incomplete and misleading. Indeed, the Defendants were required to be particularly attentive to the procedures followed in preparing the Registration Statement and review it carefully before it was disseminated, to corroborate that there are no material misstatements or omissions.

44. The Defendants were, at the very least, negligent in preparing and reviewing the Registration Statement. The preparation of a Registration Statement by corporate insiders containing materially false or misleading statements or omitting a material fact constitutes negligence. The Defendants were negligent in choosing to omit material information from the Registration Statement or failing to notice the material omissions in the Registration Statement upon reviewing it, which they were required to do carefully as the Company's directors. Indeed, the Defendants were intricately involved in the process leading up to the signing of the Merger

Agreement and the preparation of the Company's financial projections.

45. The misrepresentations and omissions in the Registration Statement are material to Plaintiff, who will be deprived of his right to cast an informed vote if such misrepresentations and omissions are not corrected prior to the vote on the Proposed Transaction.

46. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

## COUNT II

### (Against the Individual Defendants for Violations of Section 20(a) of the Exchange Act)

47. Plaintiff incorporates each and every allegation set forth above as if fully set forth herein.

48. The Individual Defendants acted as controlling persons of MDC within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their positions as officers and/or directors of MDC, and participation in and/or awareness of the Company's operations and/or intimate knowledge of the incomplete and misleading statements contained in the Registration Statement filed with the SEC, they had the power to influence and control and did influence and control, directly or indirectly, the decision making of the Company, including the content and dissemination of the various statements that Plaintiff contends are materially incomplete and misleading.

49. Each of the Individual Defendants was provided with, or had unlimited access to, copies of the Registration Statement and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

50. In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control or influence the particular transactions giving rise to the Exchange Act violations alleged herein, and exercised the same. The Registration Statement at issue contains the unanimous recommendation of each of the Individual Defendants to approve the Proposed Transaction. They were thus directly involved in preparing this document.

51. In addition, as set forth in the Registration Statement sets forth at length and described herein, the Individual Defendants were involved in negotiating, reviewing, and approving the Merger Agreement. The Registration Statement purports to describe the various issues and information that the Individual Defendants reviewed and considered. The Individual Defendants participated in drafting and/or gave their input on the content of those descriptions.

52. By virtue of the foregoing, the Individual Defendants have violated Section 20(a) of the Exchange Act.

53. As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) and Rule 14a-9 by their acts and omissions as alleged herein. By virtue of their positions as controlling persons, these Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Individual Defendants' conduct, Plaintiff will be irreparably harmed.

54. Plaintiff has no adequate remedy at law. Only through the exercise of this Court's equitable powers can Plaintiff be fully protected from the immediate and irreparable injury that Defendants' actions threaten to inflict.

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for judgment and relief as follows:

A. Preliminarily and permanently enjoining Defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B. Directing the Individual Defendants to disseminate an Amendment to the Registration Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

C. Directing Defendants to account to Plaintiff for all damages sustained because of the wrongs complained of herein;

D. Awarding Plaintiff the costs of this action, including reasonable allowance for Plaintiff's attorneys' and experts' fees; and

E. Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: March 18, 2021

Respectfully submitted,

By: */s/ Joshua M. Lifshitz*
Joshua M. Lifshitz
Email: jml@jlclasslaw.com
**LIFSHITZ LAW FIRM, P.C.**
1190 Broadway
Hewlett, New York 11557
Telephone: (516) 493-9780
Facsimile: (516) 280-7376

*Attorneys for Plaintiff*